MARY E. NEWMAN, Respondent, v. W. L. NEWBY, Appellant.

[1] ATTORNEY AND CLIENT—EXPENDITURES BY ATTORNEY—FAILURE TO OBTAIN VOUCHERS—RIGHT TO OFFSET AGAINST CLIENT'S MONEY.— An attorney claiming the right to offset, as against money remaining in his hands which was placed with him by his client to consummate an exchange of properties, purported expenditures and service rendered in connection with said transaction, was bound, as such trusted agent, to obtain vouchers and deliver them to his client with his accounts, and not having done so, failed to meet the burden of proof which he was required to meet in order to be entitled to the right of offset.

[2] ID. — ACCOUNT STATED — EVIDENCE. — In this action by a client against an attorney upon an account stated, the evidence was sufficient to establish such an account.

APPEAL from a judgment of the Superior Court of Alameda County. Eugene P. McDaniel, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Charles H. Seccombe for Appellant.

H. Raymond Hall for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover a judgment for a balance of $350 alleged to be due on a stated account; the defendant appeared and answered. In his answer he denied the mate-

rial allegations of the complaint and pleaded counterclaims and offsets. The trial court made findings in which it found that all of the allegations of plaintiff's complaint are true, and that the denial and allegations in the defendant's answer are not true. The defendant moved for a new trial, his motion was denied, and thereafter the defendant appealed under section 953a of the Code of Civil Procedure.

In his brief the appellant contends that no account stated was proved, and that the counterclaims set forth in the defendant's answer should have been allowed. Both of these points involve the sufficiency of the evidence. In the record there is evidence showing that prior to the month of July, 1919, the defendant was an attorney at law practicing his profession and engaged in some other lines of business. That some months prior to that date the plaintiff, an unmarried woman of the age of seventy years, or thereabouts, commenced her dealings with the defendant. She accepted the defendant's offer to occupy a room attached to the defendant's offices, and that room she occupied for small housekeeping purposes. From time to time she performed some services for the defendant, such as serving papers, etc. She had some moneys, and at least one piece of real estate. From time to time she loaned to the defendant small sums of money. On one occasion she employed the defendant to negotiate an exchange of her real estate for a piece of property known as the Judd property. The values of the two properties were such that the plaintiff was to pay the difference in value. At the time the transaction was taken up the plaintiff owned some United States bonds of the value of $350. Those bonds she turned over to the defendant to be applied on the exchange of her property for the Judd property. The exchange was never consummated. The plaintiff in her testimony claimed that the deal fell through by reason of nonaction on the part of the defendant. The defendant testified that the deal fell through because the plaintiff changed her mind and would not consummate the deal. On or about July 9, 1919, the defendant had converted the bonds into cash. On the date last stated the plaintiff went to the defendant and asked him for the $350—the proceeds obtained from the sale of the bonds. According to her testimony he said he did not have it at that time, but he would

get it, or he would give her a receipt for it, saying that he owed it. Thereupon he wrote a receipt: "7/9/1919 Prior to above date I received from M. E. Newman $350 of Vic Loan bonds to be converted into cash to be used in Judd purchase in exchange of property."

In rebuttal of the foregoing testimony the defendant did not claim that he had actually consummated an exchange of the plaintiff's property for the Judd property, nor did he state facts showing her to be in default, or that the owners of the Judd property had received the proceeds of the bonds above mentioned. He vaguely testified that he caused a search to be made and that he expended moneys therefor, but he did not produce any vouchers showing the expenditures nor the amounts thereof, nor did he produce any evidence that the search was ever made, excepting his own uncorroborated testimony. In this behalf he testified: "I have paid out about $99—$95, I believe. The searches on the property came to, I think, $47.50, but the expenses of Mr. Garafola being removed from the premises under the terms of the written lease that Miss Newman had entered into with him was about $47.50, as I remember it. That money was paid for the purchase of his lease and the paying of the draymen for his removal. As near as I remember it just at this date. It is not very far from that. I promised in writing to pay Mr. S. L. Fish $100 commission, made that promise as her attorney and agent under her written instructions. . . . My attorney fees for services rendered to Miss Newman in this matter and other matters, prior to this time, up to the first of December, 1919, were $200, and part of this service was rendered after July 9, 1919, and was the completion of the loan—I mean I went to Walnut Creek, made some three different trips over there trying to get someone to make the loan on this property."

As in surrebuttal of the foregoing testimony, the plaintiff testified that the defendant had agreed to conduct the real estate exchange without charge to her because of the fact that she had theretofore loaned him various sums of money and had performed services for him without charge.

[1] The claim of the appellant based on the counter-claim and offsets grew out of the purported expenditures and the service rendered by the defendant in the real estate

deal.   The appellant claimed that he had acted as the trusted attorney of the respondent.   As such trusted agent he was bound to obtain vouchers and deliver them to the respondent with his accounts.   He never did so.   Herein he failed to meet the burden of proof which rested on him.   (*Metropolis etc. Sav. Bank* v. *Monnier*, 169 Cal. 592, 598, 599 [147 Pac. 265].)   Moreover, the story told by the appellant does not show on its face that he consummated the exchange and thus earned a commission, nor that he fully performed on his part, and that the exchange was not completed solely because of the arbitrary refusal of the respondent to perform on her part.   (*Jauman* v. *McCusick*, 166 Cal. 517, 522 [137 Pac. 254].)

On his motion for a new trial the appellant claimed he had found the original papers and offered to bring them forward.   His offer was refused.   The refusal was proper because the papers which he thus offered to produce showed on their face that the respondent had not repudiated the contract of exchange but had, in fact, fully performed by executing and delivering to appellant a deed in favor of the Judds.   Moreover, the record shows that the evidence tendered by the appellant was not free from suspicion, and that the trial court did not accept it as true.   We cannot say that the trial court erred in taking this view of the evidence.

[2]   As to the main issue, the appellant argues that there is no stated account unless the evidence shows that it was intended to be a final settlement up to date, and he cites *Fee* v. *McPhee Co.*, 31 Cal. App. 295 [160 Pac. 397].   We call attention to the facts of that case and in particular to the testimony quoted on page 307 of 31 Cal. App. [160 Pac. 397], and state that we consider that the case cited rules the point, under the facts of this case, in favor of respondent instead of in favor of the appellant.

We have not overlooked the fact that the appellant claims that the real estate transaction had not been terminated July 9, 1919, the date of the receipt and the date of the conversation, which respondent relies on.   But it will suffice to say that the evidence introduced by the appellant at the trial, and that which he offered to produce in his affidavit made in support of said motion, is not of such convincing

force as to warrant us in holding that the trial court erred in disbelieving it.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 27, 1923.